IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| MICHALE PAUL HENDRIX, #2017650 | § | |
| VS. | § | CIVIL ACTION NO. 2:20cv009 |
| DIRECTOR, TDCJ-CID | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Michael Paul Hendrix, a prisoner confined at the Beto Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to § 2254 challenging his Cass County, Texas, conviction. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the for the foregoing reasons, Petitioner Hendrix's petition should be denied, and the case should be dismissed with prejudice.

**I. Procedural History**

On July 22, 2015, after a jury trial, Hendrix was sentenced to sixty-five years' imprisonment for one count of injury to a child, (Dkt. #15, pg. 359). He pleaded true to the enhancement paragraphs. Hendrix filed a direct appeal, and the appellate court affirmed the conviction in a written opinion on March 20, 2017. *See Hendrix v. State*, 2017 WL 1055679 (Tex. App.—Texarkana 2017, pet. ref'd). The Texas Court of Criminal Appeals refused his petition for discretionary review on November 1, 2017. Hendrix then filed a state habeas application on September 5, 2019, which was denied without a written order on December 18, 2019. *Id*. at 836. This timely federal petition follows.

1

## II. Factual Background

The appellate court outlined the facts of this case, in pertinent part, as follows:

> While there was conflicting evidence, the State's evidence was that, on or about June 7, 2014, Hendrix hit both of K.C.'s thighs hard, a number of times, with his fisted hand, causing complete breaks to both femurs, resulting in his legs being twisted, unnatural, and unable to support his weight. Medical care was administered, resulting in K.C. being placed in a spica cast, which immobilized his hips and both legs, but left space for his diaper to be changed. Fortunately, at least by April 2015, K.C. had healed and was walking normally again.
>
> That evidence supports a finding of serious bodily injury. While the evidence is not clear concerning the length of time K.C. could not walk—it was certainly something less than nine months—the complete, separated breaks in both femurs tends to support a finding that he suffered protracted loss or impairment of his ability to stand or walk.

*Hendrix*, 2017 WL 1055679, at *2. The appellate court specifically explained that the case presented no reversible error. *Id.* at *4 n.4.

## III. Hendrix's Habeas Claims

In his habeas petition, Hendrix raises three claims for relief. He first maintains that the trial court violated his rights under the Confrontation Clause by denying him his right to "confront witnesses against him who were critical to his defense," (Dkt. #1, pg. 6). He also claims that the trial court knowingly entered false testimony into the record. Second, Hendrix maintains that his trial counsel was ineffective for forfeiting his rights under the Confrontation Clause—as counsel failed to investigate, locate, interview, and call witnesses against him. Counsel further failed to discover exculpatory evidence that was withheld by Child Protective Services (CPS). Finally, Hendrix asserts that counsel failed to advise him of his right to appeal and file a motion for new trial. Hendrix claims that he is actually innocent.

**IV. Respondent's Answer**

Respondent urges this Court to dismiss Hendrix's petition, (Dkt. #14). Specifically, it maintains that the trial court did not deny his rights under the Confrontation Clause and that counsel was not ineffective. Respondent further argues that the state habeas court's failure to issue findings of fact and conclusions of law with respect to Hendrix's state habeas application is of no consequence.

**V. Hendrix's Response**

In his response, (Dkt. #18), Hendrix argues that the failure to issue findings of fact and conclusions of law violated his due process rights. He complains that while the burden of proof is on him in a habeas proceeding, he "stands at a disadvantage" without these findings. Hendrix further argues that his rights under the Confrontation Clause were violated because state witnesses did not testify—who could have testified to false testimony, (Dkt. #18, pg. 4). He asserts that the State failed to correct and that a witness was "coerced" to testify falsely to "create a false picture."

Hendrix argues that the June 2014 Affidavit of Removal, Exhibit A contained in the state court records, contains false information that was used to obtain an arrest affidavit. He recounts portions of the trial transcript that he alleges are "inconsistent" or "false" when compared to the affidavit. Accordingly, he argues, the State "withheld favorable evidence," and knew or should have known that false information existed.

With respect to his claims of ineffective assistance, Hendrix contends that trial counsel was ineffective for failing to investigate false statements or discover the "identity of the individual or individuals" that coerced witness testimony. He also insists that counsel failed to provide mitigating evidence and that the State failed to provide him with a copy of Exhibit A, the Affidavit of Removal.

## VI. Standard of Review

### *1. Federal Habeas Review*

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment,

4

believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

*2. Ineffective Assistance of Counsel*

To show that trial counsel was ineffective, Hendrix must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA

5

standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

**VII. Discussion and Analysis**

Hendrix failed to meet his burden under both the AEDPA and *Strickland*. He has not shown that the state court's adjudications of his claims were unreasonable or contrary to federal law.

<u>1. Trial Court Error</u>

Hendrix first maintains that the trial court violated his rights under the Confrontation Clause because three officials, who interviewed witnesses and gathered information during the investigation, elicited inconsistent/false statements—which ultimately led to an arrest warrant. He argues that his rights were further violated when these three state officials failed to testify at trial despite being critical to his defense. Hendrix takes particular interest in the lack of testimony from Ms. Halbrook, who conducted witness interviews at the Child Advocacy center, (Dkt. #15, pg. 945).

The Confrontation Clause, found within the Sixth Amendment to the United States Constitution, protects criminal defendants in two important ways. First, it gives a criminal defendant the right to confront or physically face his accusers or those that testify against him and, second, provides the right to conduct cross-examination. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). The right to confrontation is a trial right designed "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Id*. at 54 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)); *see also Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact.").

6

The United States Court of Appeal for the Fifth Circuit has repeatedly held that claims of trial court error may justify federal habeas relief if the error "is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *See Krajcovic v. Director*, 2017 WL 3974251 at *6 (E.D. Tex. June 30, 2017) (quoting *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (To be actionable in federal court, the trial court error must have "had substantial and injurious effect or influence in determining the jury's verdict."). The petitioner must also show that "there is more than a mere possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Engle v. Lumpkin*, 33 F.4th 783, 796 n.37 (5th Cir. 2022) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996)). In other words, Hendrix must show that he was prejudiced by the purported trial court error(s).

Hendrix raised these claims in his state habeas application, (Dkt. #15, pg. 883). The Texas Court of Criminal Appeals denied his application without written order. *Id*. at pg. 836. The implicit rejection of his claims is entitled to deference under the AEDPA—even if the state habeas court failed to enter findings of fact and conclusions of law. The failure to enter express findings of fact does not preclude deference under the AEDPA because "[a]s a federal court, we are bound by the state habeas court's factual findings, both implicit and explicit." *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *see also Becerril v. Quarterman*, 2007 WL 1701869 *4 (S.D. Tex.—Houston Jun. 11, 2007) ("The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief. A federal court is bound by the state habeas court's factual findings, both implicit and explicit.") (citation omitted).

In Texas, when the Court of Criminal Appeals denies a state habeas petition—with or without an order or opinion—the "denial" means that the court addressed and rejected the merits

7

of a particular claim. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claims merits."); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.").

Here, the Texas Court of Criminal Appeals denied Hendrix's state habeas application. Accordingly, the state court addressed and rejected the merits of these habeas claims—irrespective of whether the state habeas court entered explicit findings. Those findings and conclusions are entitled to a presumption of correctness on federal habeas review and the petitioner has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Hendrix's claims, he is bound by section 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

Hendrix has made no such showing. With respect to his claims that the trial court violated his rights under the Confrontation Clause by allowing false testimony at trial, as well as the State's

failure to reveal or correct the false information, the Fifth Circuit addressed the issue of perjury in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002); *see also Giglio v. United States*, 405 U.S. 150 (1972). A petitioner must prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. 303 F.3d at 337.

Due process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured. *Id*. Importantly, it is not enough that the testimony is challenged by another witness—or if it is inconsistent with prior statements. *Id*. A petitioner cannot show that perjury occurred by mere contradictory statements from witnesses, inconsistencies within a witness' testimony and conflicts between reports. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *Din Tan Ho v. Thaler*, 495 F. App'x 488, 493 (5th Cir. 2012) ("It is not sufficient for Ho merely to show that the state elicited testimony of past statements that have been recanted or contradicted by testimony produced at trial.").

Moreover, to prove a due process violation based on the prosecution's reliance on false testimony, the defendant must establish "(1) that the witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false." *Knox v. State*, 224 F.3d 470, 477 (5th Cir. 2000) (quoting *Giglio*, 405 U.S. at 153).

Here, while difficult to figure out what he deems "inconsistent," Hendrix merely proffers—at best—contradicting statements. To the extent that contradictory testimony was presented to the jury, such establishes only a credibility question for the jury that this Court will not disturb. *See U.S. v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998) (explaining that "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate credibility of witnesses. The jury has the unique role to judge the credibility and evaluate the

9

demeanor of witnesses and to decide how much weight should be given to their testimony.") (internal quotations omitted). Hendrix also does not prove that any testimony was actually "false," that the prosecution or the court were actually aware of the alleged perjury/false statement, or that the testimony was material. In these ways, Hendrix failed to show that the state court's adjudication of these claims was unreasonable or contrary to federal law—all of his claims concerning false or perjured testimony are without merit. These claims should be denied.

### 2. Ineffective Assistance of Counsel

Hendrix raises several claims of ineffective assistance of trial counsel. As mentioned, he must demonstrate both deficient performance and ensuing prejudice. He argues that trial counsel was ineffective for failing to investigate the alleged false statements—and for failing to discover the individuals who forced the witnesses to provide false statements.

To show that counsel was ineffective for failing to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). If defense counsel was aware of a fact that would cause a reasonable attorney to investigate further, then the failure to investigate further may be deficient performance. *See Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021). Federal courts are wary of claims such as these, as these claims result in analyses of varying degrees: Did counsel investigate enough? Did counsel present enough mitigating evidence? *See Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) ("We must be particularly wary of arguments that essentially come down to a matter of degrees. … Those questions are even less susceptible to judicial scrutiny.") (internal citations and brackets omitted).

Here, Hendrix's arguments are premised on false or perjured testimony. As explained above, however, he has not actually demonstrated that any testimony or statement was false—or

10

that the parties knew or should have known that the testimony was false. Because Hendrix argues that the testimony was—at best—contradictory or inconsistent, that merely presents a credibility issue for the jury. He has failed to show that any investigation into alleged false testimony would have changed the outcome of the trial.

Hendrix repeatedly insists that three of the State's witnesses failed to testify at trial. He claims that counsel was ineffective for failing to insist that they testify at trial. Specifically, he maintains that these witnesses would have revealed the origins of the false statements.

Complaints of uncalled witnesses are unfavored on federal habeas review because such allegations concerning what a proposed witness would have testified to are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *see also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) ("Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative.") (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). In order to show that counsel was ineffective for failing to call a witness, the petitioner must identify those witnesses and establish, by affidavit or otherwise, what those witnesses would have testified to at trial. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Further, the petitioner must not only show that the witness's proposed testimony would have been favorable, but also that the witness would have actually testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, however, Hendrix failed to clear these hurdles. Once again, his claims rely on his insistence that false testimony was introduced at his trial—which, as explained, shows at best inconsistent statements. Hendrix failed to show that this purported testimony would have been favorable to his defense—as he similarly failed to show that any testimony was actually false.

Based on the arrest affidavit, which includes a recitation of Ms. Halbrook's interviews with witnesses to the injury of the child, Ms. Halbrook's purported testimony would not have been favorable to Hendrix's defense. In other words, Hendrix wholly failed to show that calling these witnesses would have changed the outcome of the trial. He failed to meet his burden under section 2254(e)(1).

Finally, Hendrix maintains that trial counsel was ineffective for failing to inform him of his right to file an appeal and for failing to file a motion for a new trial. The docket reflects, however, that the appellate court rejected Hendrix's appeal. He neither explains how an additional or different appeal would have changed the outcome of the proceedings nor how the filed appeal was deficient. This claim is without merit and should be dismissed.

To the extent that Hendrix argues that counsel was ineffective for failing to file a motion for a new trial based on alleged false testimony, such claim fails. It is well-settled that to show that trial counsel was ineffective for failing to file a motion—like motions for a new trial, directed verdict, mistrial, or judgment of acquittal—a petitioner must demonstrate a reasonable probability that such motion would have been successful or meritorious. *See, e.g.*, *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) ("In addition, had counsel moved for a mistrial, we find no basis to conclude that the trial court would have granted it, or it would have reversibly erred by refusing to grant it."); *United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993) ("In order to establish prejudice, Rosalez must show that [there was] a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted").

Hendrix, here, makes no such showing. As explained above, he has not shown that any alleged testimony was false or that any argument regarding allegedly false testimony would have changed the outcome of the proceedings. In these ways, Hendrix failed to show that the trial court

would have granted any motion for new trial—or any motion related to this "false testimony" theory. This claim should be dismissed, as Hendrix failed to show that the state habeas court's adjudication of these claims was unreasonable or contrary to federal law.

### VIII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show

13

that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Hendrix failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the above-styled application for the writ of habeas corpus be denied, and the case dismissed with prejudice. It is further recommended that Petitioner Hendrix be denied a certificate of appeal *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 11th day of January, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

14